UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAHMIA, INC., individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>MUFG AMERICAS HOLDING CO.; MUFG UNION BANK, N.A.; and DOES 1 through 100,<br><br>       Defendants. | 1:20-cv-4145 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS MUFG AMERICAS HOLDING CO. AND MUFG UNION BANK, N.A.'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………………..iii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

        A.      The SBA's Rules Governing Agent Fees ................................................................ 2

        B.      Union Bank's Policy To Pay The Maximum Allowable Fees To PPP Agents ...... 3

        C.      Fahmia's Alleged Assistance To A Union Bank Borrower .................................... 4

PROCEDURAL STANDARD .................................................................................................... 5

ARGUMENT ............................................................................................................................... 6

I.      BECAUSE FAHMIA NEVER REQUESTED AN AGENT FEE, FAHMIA'S
CLAIMS ARE NOT RIPE.................................................................................................. 6

II.     FAHMIA LACKS STANDING TO ASSERT ITS CLAIMS. ........................................... 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                      **Page(s)**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .................................................................................................................6

*Baur v. Veneman*,
352 F.3d 625 (2d Cir. 2003) .....................................................................................................9

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) .......................................................................................................6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .................................................................................................................9

*Empire State Pharm. Soc., Inc. v. Perales*,
672 F. Supp. 146 (S.D.N.Y. 1987) ........................................................................................7, 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
922 F. Supp. 2d 445 (S.D.N.Y. 2013), *aff'd*, 797 F.3d 148 (2d Cir. 2015) ...........................6, 9

*Backer ex rel. Freedman v. Shah*,
788 F.3d 341 (2d Cir. 2015) ...................................................................................................10

*In re Jacks*,
642 F.3d 1323 (11th Cir. 2011) ................................................................................................8

*Makarova v. U.S.*,
201 F.3d 110 (2d Cir. 2000) .................................................................................................5, 6

*Marcavage v. City of New York*,
689 F.3d 98 (2d Cir. 2012) .......................................................................................................9

*Miller v. Brown*,
462 F.3d 312 (4th Cir. 2006) ....................................................................................................8

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006) ...............................................................................................10

*New York Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) .....................................................................................................8

*O.K. Petroleum Distribution Corp. v. Starnet Ins. Co.*,
2009 WL 2432725 (S.D.N.Y. Aug. 5, 2009) ........................................................................8, 9

*Ray Legal Consulting Grp. v. Gray*,
37 F. Supp. 3d 689 (S.D.N.Y. 2014) .....................................................................................6, 8

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)......................................................................................................9

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014)....................................................................................................5

*W. Goebel Porzellanfabrik v. Action Indus., Inc.*,
    589 F. Supp. 763 (S.D.N.Y. 1984) .......................................................................................10

**Statutes**

15 U.S.C. § 636(a)(36)(B) ...............................................................................................................2

Coronavirus Aid, Relief, and Economic Security ("CARES") Act,
    Pub. L. 116-136 (2020)...........................................................................................................2

**Regulations**

13 C.F.R. § 103.5(a).........................................................................................................................3

13 C.F.R. § 103.5(b) ........................................................................................................................2

**Other Administrative Materials**

Interim Final Rule, Business Loan Program Temporary Changes; Paycheck
    Protection Program, 85 Fed. Reg. 20,811 (Apr. 15, 2020) .....................................................2

**Other Authorities**

Edward H. Cooper, 13B *Fed. Prac. & Proc. Juris.* § 3532.3 (3d ed. 2020) ...................................8

## INTRODUCTION

Union Bank is aware of just six agents that have requested an agent fee from Union Bank. Even though it has no legal obligation to do so, *see* Memo. Of Law in Support of Defs. Joint Mot. to Dismiss ("Joint Memo."), ECF No. 29, at 7–15, Union Bank nevertheless decided that any agent that assisted any borrower who obtained a PPP loan through Union Bank will receive the maximum fee permitted under the Small Business Administration's ("SBA") regulations. All the agent has to do is complete the same Form 159 Compensation Agreement that the SBA requires all agents who assist with Section 7(a) loans to complete before they may receive an agent fee. Union Bank's policy even allows the compensation agreement to be completed after Union Bank approved a borrower's PPP loan.

Plaintiff Fahmia, Inc.—the only plaintiff in these five consolidated cases that has sued Union Bank—is not one of the six agents that has requested an agent fee from Union Bank. Although Fahmia admits in its Complaint that an agent must "submit[] the request for fee payment to the lender" to receive an agent fee, Union Compl. ¶ 35, Union Bank has no record that Fahmia did so. Union Bank has even notified Fahmia of its practice and has asked Fahmia to complete a Form 159, but Fahmia has ignored Union Bank's outreach. And the applicant that Fahmia claims to have helped with a PPP loan never told Union Bank that it used an agent in connection with its PPP loan, or that the agent was seeking a fee for its services.

On these facts, this Court lacks subject matter jurisdiction over Fahmia's attempt to recover a $78 agent fee from Union Bank: Fahmia has no ripe claim, has suffered no injury-in-fact traceable to Union Bank, and faces no imminent threat of harm. There is, accordingly, no case or controversy between Fahmia and Union Bank, and Fahmia's claims against Union Bank should be dismissed.

## BACKGROUND

### A.     The SBA's Rules Governing Agent Fees

As explained in further detail in Defendants' Joint Memorandum, the PPP was established as a "new product" under the SBA's existing Section 7(a) loan program. *See* CARES Act § 1102(a); 85 Fed. Reg. 20,811 (April 15, 2020). "Except as otherwise provided" by the CARES Act, PPP loans are subject to the same "terms, conditions, and processes" as standard 7(a) loans. 15 U.S.C. § 636(a)(36)(B); *see also* Joint Memo. at 9–15.

One of those "terms, conditions, and processes" that govern Section 7(a) loans are requirements that agents must satisfy before they may receive a fee. Among other requirements, the agent must first "execute and provide to the SBA a compensation agreement" in the form of a completed Form 159. 13 C.F.R. § 103.5(b). For Section 7(a) loans, this "agreement" is a Form 159 Fee Disclosure and Compensation Agreement. *See* ECF No. 30-1 (Declaration of Andrew Soukup, Ex. A.) This agreement must be executed by the agent, the applicant, and the lender, and requires the parties to make certain certifications. *See id.* For example, an agent must certify that the information provided accurately reflects the services provided to the applicant. *Id.*; *see also* Joint Memo. at 14–15.

The SBA's First Interim Final Rule ("IFR"), 85 Fed. Reg. 20,811 (Apr. 15, 2020), modifies the ordinary Section 7(a) procedures with respect to agents in two respects. First, any agent fees due "will be paid by the lender out of the fees the lender receives from SBA," and not from the applicant or out of PPP loan proceeds. *Id.* at 20,816. Second, the maximum fee an agent may receive is capped at a specified percentage of the loan, which varies based on the loan amount. *Id*. For loans of not more than $350,000, for example, the SBA limits any collectible agent fee to one percent. *Id.* The IFR did not otherwise modify the SBA's longstanding

requirement that agents must execute "a compensation agreement" using the Form 159 before they may receive an agent fee. *See* 13 C.F.R. § 103.5(a) (2020).

In its Complaint, Fahmia acknowledges the "straightforward system" that Congress and the SBA established for the payment of fees to agents under the PPP loan program. Union Compl. ¶ 35. Among other requirements, Fahmia admits that an agent is not eligible to receive a fee unless:

> ***the agent submits the request for fee payment to the lender*** with the agent's fee based upon (a) the work performed for the client and (b) the caps on agent fees provided by the SBA's PPP regulations.

*Id.* (emphasis added).

### B.     Union Bank's Policy To Pay The Maximum Allowable Fees To PPP Agents

Union Bank is aware of only six agents (besides Fahmia) that allegedly assisted its customers in applying for PPP loans. *See* Declaration of Kirsten Hakes ("Hakes Decl.") ¶ 2. For the reasons set forth in Defendants' Joint Memo., Union Bank has no legal obligation to pay any of these agents fees. *See* Joint Memo. at 7–15.

Nevertheless, because so few agents have requested agent fees, Union Bank voluntarily decided to pay fees to any agent of a Union Bank borrower that complies with the agent fee requirements applicable to ordinary Section 7(a) loans. Hakes Decl. ¶¶ 3–4. This includes the requirement that an agent make an actual fee request and complete the Form 159 Compensation Agreement. *Id.* ¶¶ 4–5. Union Bank's policy is to pay the maximum fees allowable under the IFR to agents that assist with PPP loans even if the fee request was not made prior to loan funding—so long as a Form 159 Compensation Agreement is completed and the request is made within 30 days after any loan forgiveness application is submitted or due. *See id.* ¶ 5 & Ex. A.

### C. Fahmia's Alleged Assistance To A Union Bank Borrower

Fahmia is a California-based accounting firm. Union Compl. ¶ 13. According to the Complaint, Fahmia assisted an unnamed borrower that obtained a PPP loan from Union Bank in the amount of $7,800. Id. ¶ 47. The Complaint further alleges that "Union Bank was paid or will be paid" a loan processing fee from the SBA totaling $390 in connection with this loan. Id. Based on these allegations, Fahmia asserts that it is entitled to one percent of the $7,800 loan at issue—or $78 from Union Bank's $390 lender fee—as the "fee for [Fahmia's] work as the agent of the borrower in submitting the application and documentation." Id. ¶ 47. Fahmia further alleges that Union Bank is "refusing to pay" Fahmia's fee. Id. ¶ 37.[1]

Critically, however, Fahmia does not allege that it ever requested an agent fee from Union Bank—let alone that it ever executed a Form 159 Compensation Agreement with Union Bank and Fahmia's purported client. Indeed, the Complaint does not even identify the client that Fahmia allegedly assisted.

Fahmia's failure to allege these necessary facts is not surprising—Union Bank has no record of Fahmia ever requesting an agent fee from Union Bank in connection with a PPP loan. Hakes Decl. ¶¶ 6–7. In its initial disclosures, Fahmia identified "███████████████" as an individual or entity with discoverable information. See Declaration of Ashley Simonsen ("Simonsen Decl.") ¶ 6 & Ex. 1 at 2. Although Union Bank made a PPP loan to ███████, Union Bank has no record that Fahmia assisted that borrower with its PPP loan application. Declaration of Ernesto Ibarra ("Ibarra Decl.") ¶ 8; Hakes Decl. ¶ 7. To the contrary, Union Bank helped ███████ complete its application; the loan application was signed by ███████; and the Union Bank

---

[1] Fahmia asserts claims for (1) a declaratory judgment that Union Bank is required to pay agent fees to PPP borrower-agents within the SBA-approved limits, (2) breach of Union Bank's contract with the SBA governing PPP loans (on a third-party beneficiary theory), (3) violations of California's UCL, (4) unjust enrichment, and (5) conversion. Union Compl. ¶¶ 60–94.

employee that helped process ▮▮▮▮'s application never interacted with Fahmia during the PPP loan application process. Ibarra Decl. ¶¶ 4–7.

Union Bank first learned that Fahmia sought an agent fee when Fahmia filed this lawsuit. Hakes Decl. ¶ 6. Since that time, Union Bank has attempted to obtain from Fahmia the information needed to pay Fahmia any agent fee for which it is eligible under Union Bank's policy. *Id.* ¶ 8. Union Bank's counsel first requested the name of Fahmia's client on June 9, 2020—a request that initially was ignored.[2] Simonsen Decl. ¶ 3. Union Bank then sent a letter to Fahmia on June 30, 2020, acknowledging Fahmia's apparent request for an agent fee; confirming (as Union Bank's counsel had previously informed Fahmia's counsel) that Union Bank's policy is to pay any eligible agent that completes the Form 159 Compensation Agreement the maximum fee allowed by the SBA; and providing detailed instructions on the documentation Fahmia and its client would need to complete in order for Fahmia to receive the requested $78 fee. Hakes Decl. ¶ 8 & Ex. B; Simonsen Decl. ¶ 6. To date, Union Bank has received no response. Hakes Decl. ¶ 9.

## PROCEDURAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it" under Article III of the U.S. Constitution. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). Where "jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's*

---

[2] Meanwhile, on June 17, 2020, a Fahmia representative contacted the banker that assisted ▮▮▮▮ with his loan application to ask for permission to access ▮▮▮▮'s Union Bank checking account. Ibarra Decl. ¶ 9. During these interactions, Fahmia never requested to be paid an agent fee for its work assisting with ▮▮▮▮'s PPP application. *Id.* ¶ 10.

*Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). When, as here, a defendant makes a Rule 12(b)(1) motion that relies on evidence beyond the complaint, "plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted . . . reveal the existence of factual problems in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (internal marks omitted). As the plaintiff, Fahmia bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113.

## ARGUMENT

Fahmia's suit should be dismissed because it is not justiciable under Article III. *First*, Fahmia has made no agent fee request that Union Bank has denied. And given Union Bank's policy, there is no reason to believe any such denial is imminent. Accordingly, Fahmia's claims are not ripe. *Second*, Fahmia lacks standing because it has suffered no injury-in-fact fairly traceable to Union Bank that is redressable by this Court; nor does it face any threat of imminent harm. To the contrary, any injury Fahmia claims to have suffered is entirely self-inflicted.

### I.  BECAUSE FAHMIA NEVER REQUESTED AN AGENT FEE, FAHMIA'S CLAIMS ARE NOT RIPE.

"Ripeness is a constitutional prerequisite to the exercise of jurisdiction by federal court." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 473 (S.D.N.Y. 2013), *aff'd*, 797 F.3d 148 (2d Cir. 2015) (internal marks omitted). In assessing ripeness, courts evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Claims for declaratory relief are not ripe unless a plaintiff makes the additional showing that "there is a substantial controversy, between parties having adverse legal interests.'" *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 700 (S.D.N.Y. 2014)." None of these elements is met here.

6

Fahmia cannot satisfy its burden to show that any of its claims are fit for judicial decision. As explained in Defendants' Joint Memo., Fahmia does not allege that it made any fee request to Union Bank that was denied. *See* Joint Memo. at 6. That is not surprising: Union Bank's search of its records indicates that Fahmia has never made any such request. *See* Ibarra Decl. ¶ 8; Hakes Decl. ¶ 7.

What is more, if Fahmia were to make such a request and to provide the required documentation, including a Form 159 Compensation Agreement, Union Bank will pay Fahmia its claimed $78 fee—consistent with Union Bank's PPP agent fee policy. Hakes Decl. ¶¶ 5, 8. In these circumstances, where a plaintiff has not been denied the benefit it seeks and there is no reason to believe that denial is imminent, the harm alleged is "too hypothetical and speculative . . . to warrant judicial intervention." *Empire State Pharm. Soc., Inc. v. Perales*, 672 F. Supp. 146, 149 (S.D.N.Y. 1987).

For example, in *Empire State Pharmacy*, medical providers sought to challenge new procedures for continued enrollment in New York State's Medicaid program. *Id.* at 147. However, because the named plaintiffs filed suit *before* the State's Department of Social Services had acted on any reenrollment application, and because the Department had informed plaintiff "that there [was] no reason to expect denial of the application," the Court dismissed the suit as unripe, finding it unfit for review. *Id.* at 148.

Similarly, in *Scoggins v. Lee's Crossing Homeowners Association*, the plaintiffs claimed that a housing association violated the Fair Housing Amendment Act by failing to grant their request for a housing accommodation. 718 F.3d 262, 267 (4th Cir. 2013). However, the plaintiffs filed suit before the housing association had acted on their application and failed to provide all required information—even after the housing association specifically asked for it. *Id.*

7

at 270.  Furthermore, the association had indicated that it would grant the application once it was complete.  *Id.*  The court therefore found the plaintiffs' claims unripe because "the defendants did not 'deny' [plaintiffs'] request, as would be necessary to present a controversy in 'clean-cut and concrete form' appropriate for adjudication by a federal court."  *Id.* (citing *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006)).  Other courts have reached similar outcomes.  *See In re Jacks*, 642 F.3d 1323, 1332 (11th Cir. 2011) (debtor's claims against bank for failing to disclose certain fees not ripe where bank indicated that it may not collect on the fees); *O.K. Petroleum Distribution Corp. v. Starnet Ins. Co.*, 2009 WL 2432725, at *2 (S.D.N.Y. Aug. 5, 2009) (claims for breach of contract, violation of New York General Business Law, and declaratory relief "not ripe for adjudication" where defendant acknowledged obligation to pay).

Here, too, Fahmia has not requested—much less been denied—the $78 agent fee it seeks.  Nor is there any reason to believe any denial is imminent, given Union Bank's policy.  To the contrary, Union Bank has provided every assurance that it will pay the fee once Fahmia submits the required documentation.  Hakes Decl. ¶ 8 & Ex. B.  Fahmia's alleged harm is thus "too hypothetical and speculative . . . to warrant judicial intervention," *Empire State Pharm. Soc.*, 672 F. Supp. at 149, and there is no "substantial controversy" for the court to resolve, *Ray Legal Consulting*, 37 F. Supp. 3d at 700.

Nor will Fahmia suffer any hardship if the Court dismisses its claims.  "An assessment of hardship often turns on a straight-forward prediction of the course events are likely to take," Edward H. Cooper, 13B *Fed. Prac. & Proc. Juris.* § 3532.3 (3d ed. 2020), and "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship," *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 134 (2d Cir. 2008).  Here, the most likely course of events if Fahmia requests a fee from Union Bank is that Union Bank

8

will pay it—as it has repeatedly said it would. *See* Hakes Decl. ¶ 8 & Ex. B. Fahmia thus faces no "direct and immediate dilemma," *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d at 473, and its claims should be dismissed as unripe.

## II.     FAHMIA LACKS STANDING TO ASSERT ITS CLAIMS.

In addition to being unripe, Fahmia's claims against Union Bank should be dismissed for lack of standing. The "irreducible constitutional minimum of standing" requires that Fahmia "allege, and ultimately prove, that [it] has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). When a plaintiff seeks declaratory relief, "a plaintiff must [further] demonstrate a 'certainly impending' future injury." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Fahmia cannot make this showing.

*First*, for the same reasons Fahmia's claims are not ripe, Fahmia also has not suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61 (internal marks omitted); *see also O.K. Petroleum*, 2009 WL 2432725, at *2 (ripeness and standing both "require plaintiff to allege an injury in fact"). Fahmia has made no fee request that Union Bank has denied. And given Union Bank's policy, there is no "certainly impending future injury." *Carver*, 621 F.3d at 228. Fahmia therefore fails the first required element of standing.

*Second*, any injury Fahmia claims to have suffered is entirely self-inflicted, and not traceable to Union Bank. "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (internal marks omitted). A plaintiff may not establish injury for standing purposes based on "self-inflicted injuries." *Clapper v. Amnesty*

9

*Int'l USA*, 568 U.S. 398, 416 (2013). "An injury is 'self-inflicted' so as to defeat standing" where "the injury is so completely due to the plaintiff's own fault as to break the causal chain." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015).

Fahmia cannot demonstrate any causal nexus between its alleged injury and Union Bank's alleged conduct. Union Bank first learned of Fahmia's fee request when Fahmia filed this lawsuit. Hakes Decl. ¶ 6; Ibarra Decl. ¶ 11. Thereafter, Union Bank's counsel advised Fahmia's counsel that the bank intended to pay the maximum fees allowable by the SBA to any agent that completes a Form 159 Compensation Agreement. Simonsen Decl. ¶ 5. Union Bank then sent Fahmia a letter, reiterating the bank's policy and providing instructions on how to request an agent fee. *See* Hakes Decl. ¶ 8 & Ex. B. Even Fahmia recognizes that it must actually request a fee as a necessary prerequisite to receiving one. *See* Compl. ¶ 35.

Despite Union Bank's assistance, Fahmia never submitted a completed Form 159 Compensation Agreement. Hakes Decl. ¶ 9. Accordingly, any injury Fahmia claims to have suffered is entirely self-inflicted, and cannot be traced to Union Bank. *See W. Goebel Porzellanfabrik v. Action Indus., Inc.*, 589 F. Supp. 763, 766 (S.D.N.Y. 1984) (harm from party's "unilateral" decision was "strictly self-inflicted" and not traceable to defendant's conduct). Having "chosen to remain in the lurch, [Fahmia] cannot demonstrate an injury sufficient to confer standing." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (plaintiff that had "within its grasp an easy means for alleviating" its alleged injury lacked standing).

## CONCLUSION

The Complaint should be dismissed for lack of subject matter jurisdiction.

10

Dated: Washington, D.C.
July 10, 2020

Respectfully submitted,
COVINGTON & BURLING LLP

By: /s/ Ashley M. Simonsen
    Ashley M. Simonsen

    Andrew Soukup (*pro hac vice*)
    S. Conrad Scott
    Calvin Cohen
    850 Tenth Street, NW
    Washington, DC 20001
    (202) 662-6000
    asoukup@cov.com
    cscott@cov.com
    ccohen@cov.com

    Ashley M. Simonsen (*pro hac vice*)
    Brittany L. Benjamin
    1999 Avenue of the Stars
    Los Angeles, CA 90069-4643
    (424) 332-4800
    asimonsen@cov.com
    bbenjamin@cov.com

*Attorneys for Defendants MUFG Union Bank, N.A., and MUFG Americas Holdings Corporation*